D'ANTUONO ET AL., APPELLEES, *v.* CITY OF SPRINGFIELD, APPELLANT.

103

(No. 564—Decided December 2, 1960.)

*Mr. Glenn E. Detling*, prosecuting attorney, for appellees.
*Mr. Thomas J. Veskauf*, law director, and *Mr. Charles E. Carter*, for appellant.

KERNS, J. This is an appeal on questions of law and fact from a judgment of the Court of Common Pleas of Clark County enjoining the collection of sidewalk assessments.

On August 17, 1953, the City Commission of Springfield, Ohio, passed a resolution providing in part as follows:

"Section 1. Sidewalks, curbs and gutters shall be constructed or repaired, as required, along the following streets within the city:

"1. Beacon Street from Sweetbriar Lane to Sunset Avenue, east side only, *sidewalk.*" (Emphasis ours.)

Each of the two plaintiffs owns a separate parcel of real estate abutting Beacon Street. The plaintiff Anthony D'Antuono owns a home situated on a corner lot facing Sunset Avenue and running alongside Beacon Street for a distance of 150 feet to vacant land owned by the other plaintiff, Mary D'Antuono, which contains 4.5 acres and has a frontage on Beacon Street of approximately 532 feet.

Although this case involves assessments against land owned separately by different people, the cases were tried and submitted to the court on the same pleadings. We find, however, after a review of the record, that the controlling issue as to each tract of land is different, and for that reason, each tract and its assessment will be discussed as a separate and distinct matter.

With reference to the land owned by Anthony D'Antuono, the question arises whether the notice to construct the sidewalk was valid. Section 729.02, Revised Code, which provides for notice reads in part as follows:

"When the legislative authority of a municipal corporation declares by resolution that certain specified sidewalks, curbing, or gutters shall be constructed or repaired, the clerk of the legislative authority shall cause a written notice of the passage of such resolution to be served upon the owner or agent of the owner of each parcel of land abutting on such sidewalk who is a resident of the municipal corporation, in the manner provided for the service of summons in a civil action * * *."

Section 729.05, Revised Code, provides further:

"If the sidewalks, curbing, or gutters mentioned in section 729.02, of the Revised Code are not constructed within fifteen days or repaired within five days from the service of notice or completion of the publication, the director of public service in cities may have it done at the expense of the owner, and all such expenses shall be assessed on all the property bounding or abutting thereon. * * *"

Sometime after the expiration of the fifteen-day period provided by this section, the city proceeded to construct a sidewalk alongside the plaintiff's property. The notice served upon Anthony D'Antuono recites in part as follows:

"You are hereby notified that in accordance with Resolution No. 2535, adopted by the City Commission of the city of Springfield, Ohio, on the 17th day of August, 1953, you are required to construct or repair the *curb and gutter* in front of your premises along the east side of Beacon Street, * * *." (Emphasis ours.)

It thus becomes apparent that the resolution passed by the city commission and the notice served on the landowner are inconsistent. The resolution provides for the construction of "sidewalks" and the notice requires the construction of "curb and gutter." Needless to say, the two terms are not interchangeable. Nor does the term, "curb and gutter," include "sidewalks." It is a matter of common knowledge and experience that many streets have curbs and gutters with no sidewalks whereas other streets may have sidewalks with no curbs and gutters.

If the owner had proceeded to construct curbs and gutters within fifteen days at his own expense as permitted by Section 729.05, Revised Code, and as required by the notice he received, he would not thereby have fulfilled the requirement of the reso-

lution of the city commission, and the failure of the city to notify the owner to construct a sidewalk in accordance with the resolution denied the owner the right to elect to construct a sidewalk within fifteen days at his own expense without any intervention by the city. See *Johnson* v. *City of Glenville*, 16 C. C. (N. S.), 607, 31 C. D., 674; *Meek* v. *Village of Collinwood*, 10 C. C. (N. S.), 9, 20 C. D., 63.

The statutory requirement as to the giving of notice of the passage of a resolution of necessity is generally regarded as jurisdictional. 28 Ohio Jurisdiction, 792, Section 499; *Joyce* v. *Barron, Treas.*, 67 Ohio St., 264. In our opinion, the purported notice served upon this plaintiff was not sufficiently definite to sustain an assessment against his property.

The notice to the other plaintiff, Mary D'Antuono, was not similarly defective, but there is a question whether her land was specially benefited by the sidewalk improvement.

Section 729.06, Revised Code, provides in part as follows:

"In any case in which special assessments have been made on property for all the cost of the construction or repair of sidewalks, curbing, or gutters under such sections, such assessments, *within the limitation of benefits and the limits of thirty-three per cent of the taxed value* of the property, shall be valid assessments upon such property." (Emphasis ours.)

The ordinances levied and assessed the land owned by this plaintiff in the amount of $1,576.60. One of the city's witnesses testified that the tax valuation of the land in question was $2,880. The record furnishes no further information on this point, but if this testimony was in fact correct, it would appear, at the outset, that the assessment is substantially in excess of statutory limitations.

The plaintiff argues rather that her property received no special benefits from the sidewalk improvement.

This presents a question of fact depending upon evidence which shows that there are no buildings on the plaintiff's land; that the land is used for agricultural purposes; that the land is below the elevation of the street; and that there are no sewerage facilities along the street. The witnesses for both the city and the owner were in substantial agreement that the sidewalk was of no special benefit to the land so long as it was used for agricultural purposes. In this regard, it is interesting to note

that the land was being used as a cornfield at the time of trial which was almost four years after the sidewalk was constructed. And at the time the matter was argued to this court, which was more than seven years after the construction of the sidewalk, counsel for the plaintiff stated, without contradiction, that the land was still being used for agricultural purposes.

But witnesses for the city visualized special benefits from future use of the land for building lots, and this opened the door to conflicting testimony on such subjects as drainage, fill, availability of city utilities, and whether the sidewalk was at proper grade for lot purposes.

The evidence shows further that there were no sidewalks across Beacon Street from the plaintiff's land and that the sidewalk constructed by the city in front of plaintiff's land was a connecting link between two populated areas. Mr. Schutte, who was president of the city commission when the sidewalk was constructed, testified that the improvement resulted from a petition received from people living in the Sweetbriar Addition who had children going to Kenwood School and who were concerned about the exposure of their children to vehicular traffic. Other testimony of the same witness further indicates that the construction of the sidewalk may have been a "community project," thus lending credence to the contention that the general public was the real beneficiary so far as any immediate use of the sidewalk was concerned.

It is well established that assessments may be based on potential and prospective benefits to land, but an assessment that completely ignores the difference in value between an immediate opportunity of use and a use that is prospective only is generally regarded as arbitrary and unreasonable. Here the prospective benefits appear too speculative and remote to justify the assessment. We realize that courts may not interfere with the discretionary power of the legislative body of the city concerning benefits except in those cases where there is a clear abuse of discretion. But in our opinion, this is such a case.

For the reasons stated, therefore, the collection of assessments from both plaintiffs will be enjoined.

A decree may be drawn accordingly.

*Decree accordingly.*

WISEMAN, P. J., and CRAWFORD, J., concur.